UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OTIS McALLISTER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:15CV00949 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

A jury found Petitioner guilty of soliciting a conspiracy to commit bank robbery in violation of 18 U.S.C. § 373(a), based upon acts Petitioner committed in an effort to obtain a reduction of the 37-year sentence he was serving for a prior bank-robbery and firearms convictions. *See McAllister v. United States*, No. 4:08CV1414 (HEA). Petitioner appeared before this Court for sentencing on July 12, 2013. At that time, the Court sentenced Petitioner to a 30-month term of imprisonment, to be served consecutively to his undischarged federal prison term.

Petitioner appealed his conviction and sentence to the Eighth Circuit Court of Appeals. On appeal, Petitioner's counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), challenging the sufficiency of the evidence, the reasonableness of the sentence, and the effectiveness of counsel's representation. In a pro se supplemental brief, Petitioner challenged his counsel's failure to raise the affirmative defense of renunciation. The Court of Appeals held that the largely uncontroverted evidence was sufficient for the jury to find Petitioner guilty of soliciting a conspiracy to commit bank

robbery. The Court further concluded that Petitioner's 30-month sentence was not unreasonable. Finally, the Court deferred consideration of any ineffective-assistance claim for possible proceedings under 28 U.S.C. § 2255. Petitioner then filed this instant § 2255 motion.

## I.
## **PRINCIPLES GENERALLY APPLICABLE TO § 2255 MOTIONS**

In general, to state a claim for relief under 28 U.S.C. § 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962). The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964).

Title 28 U.S.C. § 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Instead, a § 2255 cause of action is intended only to correct an error which rises to the level of a "fundamental defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427.

In addition, a collateral attack pursuant to § 2255 is not interchangeable or substitutable for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). That

is, a petitioner is usually precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousely v. United States*, 523 U.S. 614, 622 (1998). *See also Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002).

Conversely, claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly addressed in a § 2255 motion. *United States v. Looking Cloud*, 419 F.3d 781, 788-89 (8th Cir. 2005).

## II.

## ANALYSIS

### A. Petitioner's Claims

Petitioner raises two claims for post-conviction relief. Although he delineates his claims as two separate arguments, he appears to be arguing the same thing in both claims. First, he asserts:

> Counsel labored under a conflict in that he was predisposed to the correctness of the government's theory of defendant's guilt and to defendant's ignorance relative to defendant's understanding of the applicability of the affirmative defense to defendant's case. Due to said conflict counsel refused to argue affirmative defense at defendant's trial despite the fact that counsel had previously misled defendant by promising that he would in fact raise the affirmative defense.

Petitioner's motion, p. 4.

Next, he asserts:

> Counsel could not comprehend the applicability of the affirmative defense to defendant's actions and the circumstances of the charged offense. After lieing [sic] to defendant and promising that he would in fact raise said affirmative defense at trial, counsel's inability to under[stand] the essential elements of the statutes affirmative defense under 373(b) caused him not to argue said defense.

Petitioner's motion, p. 5.

Essentially, Petitioner is arguing that his counsel was ineffective for failing to raise the affirmative defense – later identified as renunciation -- at trial, despite the fact that he told Petitioner he would raise it.

### B. Ineffective Assistance of Counsel Standards

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To succeed on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo*, 223 F.3d at 925.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, at 687-88; *Sera*, 267 F.3d at 874. There are two substantial

impediments to making such a showing. First, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. *See also Ford v. Lockhart*, 905 F.2d 458, 462 (8th Cir. 1990) (evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently). Second, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

In addition to proving a deficiency in counsel's performance, the movant must also prove that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692. The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *DeRoo*, 223 F.3d at 925.

A court need not even determine whether a movant meets the "performance" prong of the *Strickland* test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course

should be followed.'" *Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998). *See also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

**C. Affirmative Defense of Renunciation**

Petitioner was convicted of violating 18 U.S.C. § 373(a), which provides:

> Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned….

18 U.S.C. § 373(a). That statute section also allows for an affirmative defense:

> It is an affirmative defense to a prosecution under this section that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant prevented the commission of the crime solicited.

18 U.S.C. § 373(b).

The Circuit Court cases addressing § 373(b) are few. Most recently, the Seventh Circuit addressed the affirmative defense of renunciation in *United States v. Dvorkin*, 799 F.3d 867 (7th Cir. 2015):

> Section 373(b) of Title 18 provides a renunciation defense for defendant charged with violating § 373(a). [footnote omitted] To establish the defense, a defendant must show (1) that he "prevented the commission of the crime solicited," and (2) that he did so "under circumstances manifesting a voluntary and complete renunciation of his criminal intent." 18 U.S.C. § 373(b). A renunciation is not "complete" if it is tentative, conditional, or otherwise "motivated in whole or in part by a decision to postpone the commission of the crime until another

time." *Id*. Relatedly, a renunciation "is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension…." Model Penal Code § 5.01(4); *accord United States v. Dworken*, 855 F.2d 12, 22 (1st Cir. 1988); 21 Am. Jur. 2d *Criminal Law* § 157 (2008); 4 Charles E. Torcia, *Wharton's Criminal Law* § 700 (15th ed. 1996); 22 C.J.S. *Criminal Law* § 161 (2006).

\*\*\*

[T]o invoke § 373(b)'s renunciation defense, a defendant must "actually prevent[ ] the commission of the crime [solicited] (not merely ma[k]e efforts to prevent it)." S.Rep. No. 98–225, at 309 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3489.

*Dvorkin*, 799 F.3d at 880.

### D. Counsel was not Ineffective for Failing to Raise a Renunciation Defense as no Factual Basis Existed to Support the Defense

Petitioner cannot prevail on his claim of ineffective assistance of counsel because he cannot establish that his counsel's performance fell below constitutionally acceptable standards and, even if counsel's performance was constitutionally infirm, that such performance resulted in prejudice to Petitioner. In support of the Government's position, the Government submitted its Exhibit 1, which is the affidavit of Petitioner's counsel explaining his decision not to pursue the affirmative defense of renunciation.

#### 1. Performance

Petitioner cannot establish that his counsel's representation was ineffective for failing to raise a renunciation defense because the record establishes that the facts did not support such a defense. The pertinent facts of Petitioner's case are set forth in Exhibit 1, all of which are corroborated by the testimony at trial.

7

The crux of Petitioner's case was that he was serving a 37-year sentence in federal prison for the robbery of eighteen banks. He wanted a reduction in that sentence. To that end, he carefully planned a bank robbery. He solicited his nephew, Anthony McAllister, and his two cousins, Ray and Willie Bassett, to participate. Petitioner told these family members that he had received information from an individual who was working at a bank regarding when the bank would be in possession of a large sum of money. Petitioner would arrange for the robbery and he, this individual, and his family members would share the proceeds. Exhibit 1, p. 3. The robbery was planned for November 4, 2011. Exhibit 1, p. 4.

Over a lengthy period of time, Petitioner had numerous telephone conversations with Ray and Willie Bassett, discussing at great length the preparations for the bank robbery. Exhibit 1, p. 3. Following several calls from Petitioner, Ray and Willie Bassett rented a car and drove to St. Louis several days prior to the scheduled bank robbery. Further, upon arrival in St. Louis, they traveled to the location of the bank to familiarize themselves with the location and the physical structure of the bank. Exhibit 1, p. 3.

As late as November 3, 2011, the day before the planned robbery, Petitioner had a number of phone conversations with Ray and Willie Bassett, during which they finalized preparations for the bank robbery. During the call, Petitioner provided clear instructions regarding the female bank employee who would assist Ray and Willie Bassett, the car in which the bank employee would be driving when she arrived at work, and set a time for the bank robbery. Petitioner never told Ray or Willie Bassett to abandon the planned

8

robbery. In fact, as late as 7:00 p.m. the night before the robbery, Petitioner was telling the Bassetts to proceed with the robbery. Exhibit 1, p. 4-5.

In the early morning of November 4, 2011, before Ray and Willie Bassett could proceed to the robbery location, agents with the FBI conducted a search of the house where Ray and Willie Bassett were staying. Ray and Willie were arrested and a variety of items, including gloves, dark shirts, stocking hats and a Smith and Wesson revolver were recovered. Exhibit 1, p. 3-4

Unbeknownst to Willie and Ray Bassett, and critical to the analysis of this issue, while Petitioner was engaging in conversations and preparations with the Bassetts, he was simultaneously contacting the FBI and informing agents that Willie and Ray Bassett were going to commit a bank robbery. His hope was that the FBI would then interrupt the robbery and Petitioner would receive credit on his earlier sentence due to his assistance in foiling this crime. Exhibit 1, p. 4.

Under the facts of this case, the defense of renunciation simply is not available. Although Petitioner approached the FBI and reported the robbery scheme, he was simultaneously encouraging Willie and Ray Bassett to go through with the plans. He never told either of the Bassetts to abort the attempt. He never tried to stop the Bassets from proceeding with the robbery. He wanted them to proceed. It was only if they proceeded with the robbery that his ultimate goal of receiving a sentence reduction would likely be accomplished. As he did not actually make any effort to prevent the commission of the crime, and instead was actually encouraging Willie and Ray Bassett to commit the

crime, the affirmative defense of renunciation was not available to Petitioner. *Dvorkin*, 799 F.3d at 880.

Petitioner's counsel clearly recognized that the defense of renunciation did not apply in Petitioner's case. See Exhibit 1. Therefore, counsel did not provide constitutionally infirm representation when he failed to request that the Court submit such a defense to the jury. Petitioner's claim of ineffective assistance of counsel thus fails.

### 2. Prejudice

Petitioner also fails to meet the *Strickland* prejudice prong. As stated earlier, the burden is on Petitioner to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner cannot meet this standard.

As just discussed, the facts of this case simply did not support the submission of a renunciation defense. Therefore, this Court would not have submitted such a defense to the jury, even had counsel requested it on Petitioner's behalf. As such, Petitioner cannot establish that a reasonable probability exists the outcome of his criminal proceedings would have differed had counsel pursued such a defense at trial. Because Petitioner cannot establish the prejudice prong of the *Strickland* analysis, his claim is denied.

## CONCLUSION

For the foregoing reasons, this Court denies McAllister's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because McAllister has not made a substantial showing of the denial of a federal constitutional right.

Dated this 22nd day of January, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE